UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MADISON ROW MARKETING, INC.,

    Plaintiff,

v.

BEEHIIV INC., a New York corporation; DAN KRENITSYN,

    Defendants.
_____/

Civil Action No. 1:25-cv-26130-JB/Torres

**DEFENDANT BEEHIIV INC.'S**
**OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND**

    The case brought by Plaintiff Madison Row Marketing, Inc. ("Plaintiff") against Defendant beehiiv Inc. ("beehiiv") is nothing but a deliberate attempt to avoid federal court jurisdiction over claims against a non-Florida company premised entirely on a federal statute, the Controlling the Assault of Non-Solicited Pornography and Marketing Act ("CAN-SPAM Act"). Plaintiff originally initiated this case against beehiiv based only on allegations that beehiiv failed to follow "email marketing law" after terminating Plaintiff's account for unlawfully spamming tens of thousands of email addresses. Notice of Removal Ex. D ¶ 30, ECF 1-4 ("FAC"). In an apparent attempt to avoid federal jurisdiction, Plaintiff amended the complaint to fraudulently join Daniel Krenitsyn, beehiiv's chief of staff, as a co-defendant despite the dearth of any allegations that he was involved in or responsible for the conduct asserted.

    In over eighty paragraphs of allegations, a mere six of those reference Mr. Krenitsyn. Two are about his supposed place of residence based on Plaintiff's counsel's search for his social media profile (*id.* ¶¶ 3, 5), and the other four merely speculate he must have been responsible for beehiiv's legal compliance efforts, writ large, based on his job title (*id.* ¶¶ 8, 18, 47, 64). These are quintessentially conclusory allegations not sufficient to state a claim under Florida law. They are also refuted by Mr. Krenitsyn's declaration filed in support of beehiiv's Notice of Removal, which makes clear that he had no involvement in beehiiv's efforts to comply with email marketing or other laws, or any responsibility for Plaintiff's terminated account. This makes

sense: a chief of staff is a plainly administrative role, and Plaintiff's argument would allow any plaintiff to defeat federal court jurisdiction by suing an employee who lives in-state, no matter how unrelated the employee's role is to the allegations at hand. This is improper.

In moving for remand, Plaintiff repeatedly mischaracterizes the record, falsely accusing Mr. Krenitsyn of "admit[ting] under oath that he has failed to adhere to Florida law" in his declaration. Mot. at 3; *infra* at 3-4 (identifying three other instances of this same mischaracterization in Mot. at 3, 4, 11). These accusations are clearly misleading. Mr. Krenitsyn's declaration states he was not responsible for matters of legal compliance; nowhere does it say that beehiiv was at fault. *See* Notice of Removal Ex. L ¶¶ 7-9, ECF 1-12 ("Krenitsyn Decl."). Plaintiff's reliance on fraudulent-joinder cases limited to slip-and-fall claims against store managers fares no better. Those decisions involved Florida laws specific to slip-and-fall claims, and the defendants there failed to present unrebutted evidence establishing fraudulent joinder. Mot. at 14-16; *see also* Fla. Stat. § 768.0755. Plaintiff presents these cases as "almost identical," but they are not remotely similar. Mot. at 14-15.

Plaintiff's argument that beehiiv waived its right to remove also fails. Routine, non-dispositive actions taken to comply with state court procedures fall far short of the high bar required for a defendant to waive the right to remove. Here, Plaintiff points to two mundane actions beehiiv took in state court before removing this case—contacting a Miami-Dade County Court clerk about the status of a pretrial conference and filing a mandated response to an order to show cause. For these reasons, Plaintiff's Motion for Remand should be denied.

## FACTUAL BACKGROUND

beehiiv is a newsletter creation platform that allows users to send email newsletters. On October 26, 2025, Plaintiff initially filed this action as a small claims proceeding in Miami-Dade County Court, seeking $99.00 in damages. Notice of Removal Ex. A ¶ 3, ECF 1-1. On November 27, 2025, Plaintiff amended the complaint to suddenly seek $19,744,000 in damages and add Mr. Krenitsyn, as a co-defendant. *See* FAC ¶ 32.

The FAC asserts four claims against beehiiv and Mr. Krenitsyn, a claim under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), negligence, injunctive relief, and declaratory judgment. *Id.* at 11-15. The allegations against Mr. Krenitsyn contained in the FAC, however, are sparse, conclusory, and boil down to nothing more than the (inaccurate) speculation that Mr. Krenitsyn's role as a chief of staff necessarily means he was responsible for the conduct

alleged of beehiiv in this matter. Specifically, the FAC contains only six paragraphs that contain an allegation directed at Mr. Krenitsyn. *Id.* ¶¶ 3, 5, 8, 18, 47, 64. Two of those paragraphs are about Mr. Krenitsyn's supposed place of residence based on Plaintiff's counsel's review of his LinkedIn profile. *Id.* ¶¶ 3, 5. The remaining four paragraphs consist of a conclusory assertion that based solely on Mr. Krenitsyn's title as beehiiv's chief of staff, he is responsible for beehiiv's legal compliance. *Id.* ¶¶ 47 ("As the Chief of Staff of Defendant beehiiv, Defendant Krenitsyn is responsible for ensuring that Defendant beehiiv acts in accordance with legal requirements."); *see also id.* ¶¶ 8, 18, 64 (making similar allegations). Beyond these six paragraphs, the remainder of the FAC does not contain allegations discussing or specifically referencing Mr. Krenitsyn. Instead, the rest of the FAC asserts various conduct by "Defendants" but does not allege any conduct by Mr. Krenitsyn specifically.

On December 29, 2025, beehiiv timely removed this lawsuit to this Court. The Notice of Removal explains that Plaintiff fraudulently joined the non-diverse Mr. Krenitsyn solely to destroy this Court's subject matter jurisdiction because the FAC fails to state a possible claim for relief against Mr. Krenitsyn. Notice of Removal at 5-7, ECF 1. Attached to the Notice of Removal was a declaration from Mr. Krenitsyn that further supports the fraudulent nature of Plaintiff's claims against Mr. Krenitsyn. This includes the fact that, at the time the FAC was filed and at all times relevant for the FAC, Mr. Krenitsyn served as beehiiv's chief of staff and had no role in the conduct alleged against beehiiv and no involvement in or responsibilities related to beehiiv's legal compliance efforts in general. *See* Krenitsyn Decl. ¶¶ 4, 7-9.

On January 28, 2026, Plaintiff filed a Motion for Remand ("Motion"). Plaintiff does not dispute that the case meets the amount-in-controversy requirement under 28 U.S.C. § 1332 or that complete diversity exists in this case but for the presence of Mr. Krenitsyn. The Motion only argues that (1) Mr. Krenitsyn was not fraudulently joined, (2) beehiiv purportedly waived its right to remove, and (3) the FAC does not invoke a federal question even though all four claims are premised on direct references to the CAN-SPAM Act. The Motion supports these arguments by making numerous mischaracterizations flatly contradicted by the record.

First, Plaintiff argues that Mr. Krenitsyn was not fraudulently joined because "Defendant Krenitsyn has sworn in his affidavit in support of removal to this Court that Defendant Krenitsyn has **no** regard for 'ensuring that beehiiv acts in accordance with legal requirements, including those related to email marketing and unsubscribe tracking.'" Mot. at 3. Plaintiff, in fact, insists

3

"Defendant Krenitsyn's own affidavit to this Court admits under oath that he has failed to adhere to Florida law." *Id.*  Plaintiff goes so far as to assert that "Defendant Krenitsyn's admission of not adhering to FDUPTA [sic] would almost certainly compel the state court to enter summary judgment against Defendant Krenitsyn." *Id.* at 4; *see also id.* at 11 ("[H]e admits under oath in his affidavit in support of removal that he failed to adhere to FDUPTA [sic].").  In reality, Mr. Krenitsyn's declaration stated that "[his] responsibilities did not include and have not included ensuring that beehiiv acts in accordance with legal requirements, including those related to email marketing and unsubscribe tracking." Krenitsyn Decl. ¶ 8.

Plaintiff also repeatedly claims that "Defendants admit to violating [the FDUTPA] by failing to provide Plaintiff with the requisite unsubscribe data." Mot. at 2; *see also id.* at 10 ("Defendants have already admitted to the bulk of the Amended Complaint's allegations . . . ."); *id.* at 12 ("Defendants have admitted that Plaintiff's allegations in the Amended Complaint are correct.").  The FAC, however, does not allege facts showing that beehiiv admitted to violating the FDUTPA, nor does the Motion present any evidence of such admission (because beehiiv did not and has never admitted to violating the FDUTPA).

Second, Plaintiff's Motion contends that beehiiv waived its right to remove by supposedly engaging in *ex parte* communications with the state court. *Id.* at 18.  Plaintiff also accuses the state court of improperly relying on *ex parte* communications to issue an order to show cause and change a hearing date. *Id.*  ("Defendants' *ex parte* communications with the state court judicial staff resulted in the state court issuing a Show Cause Order," "Defendants' *ex parte* communications with the state court also resulted in the altering of the state court's hearing set in the matter").  As support for these assertions, Plaintiff cites solely to its counsel's declaration—despite failing to explain how its counsel could possess firsthand knowledge of allegedly *ex parte* communications to which he was not a party. Mot. Ex. A ¶¶ 14-18.  Plaintiff further argues that beehiiv waived removal by filing a three-page response to the state court's Order to Show Cause, which expressly directed the parties to address whether the case should be transferred from small claims to circuit court. *See* Mot. at 18; Notice of Removal Ex. G, ECF 1-7.  Beyond that, the Motion to Remand otherwise offers no factual or legal basis to support its claim that beehiiv waived its right to remove.

4

**LEGAL STANDARD**

I. **Fraudulent Joinder**

A civil action filed in state court may be removed to federal court where the federal courts have diversity or federal-question jurisdiction. 28 U.S.C. § 1441(a). Where, as here, a plaintiff names a non-diverse defendant solely to defeat federal diversity jurisdiction, the court must disregard that defendant's citizenship and deny any motion to remand because the plaintiff has engaged in fraudulent joinder. *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011). Once fraudulent joinder is established, the court may properly exercise diversity jurisdiction notwithstanding the presence of the non-diverse defendant. *Id*.

To establish fraudulent joinder, the removing party must prove that "(1) there is no possibility the plaintiff can establish a cause of action against the fraudulently joined party; or (2) the plaintiff fraudulently pleaded jurisdictional facts." *Otoh v. Fed. Nat'l Mortg. Ass'n*, No. 24-12431, 2025 WL 915028, at *3 (11th Cir. Mar. 26, 2025). "The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998) (citations omitted). Courts evaluate claims of fraudulent joinder under a summary-judgment-type framework, applying a procedure analogous to that governing motions under Federal Rule of Civil Procedure 56. *Legg v. Wyeth*, 428 F.3d 1317, 1322-25 (11th Cir. 2005). Importantly, "[w]hen a defendant presents an undisputed affidavit, the court cannot resolve the facts in the plaintiff's favor 'based solely on the unsupported allegations in the [plaintiff]'s complaint.'" *De Varona v. Disc. Auto Parts, LLC*, 860 F. Supp. 2d 1344, 1346 (S.D. Fla. 2012) (citing *Legg*, 428 F.3d at 1323). Instead, "similar to summary judgment, the plaintiff has the burden of showing that there is some question of fact in dispute—by submitting evidence." C*aprio v. R. J. Reynolds Tobacco Co.*, No. 07-20712-CIV, 2007 WL 9702732, at *2 (S.D. Fla. Sept. 28, 2007) (citing *Legg*, 428 F.3d at 1323).

II. **Waiver of the Right to Remove**

Waiver of the right to remove is found only in the rarest of circumstances, requiring "substantial offensive or defensive action . . . indicating a willingness to litigate in that tribunal before filing a notice of removal to federal court." *Yusefzadeh v. Nelson, Mullins, Riley &*

*Scarborough, LLP*, 365 F.3d 1244, 1246 (11th Cir. 2004). By way of example, a defendant does not waive its right to remove by taking actions in state court that are procedurally required, responsive, or designed to preserve the status quo pending removal. Indeed, the Eleventh Circuit and courts in this District have repeatedly held that filing motions to dismiss, responsive pleadings, or other pre-answer motions do not alone constitute waiver. *See, e.g.*, *Gelbstein v. Costco Wholesale Corp.*, No. 20-81673-CV, 2021 WL 8825394, at *4 (S.D. Fla. Jan. 20, 2021) ("[T]he Eleventh Circuit has held that the filing of a responsive pleading or a pre-answer motion does not, on its own, constitute active participation that would waive a defendant's removal right."); *Yusefzadeh*, 365 F.3d at 1246 ("[T]he filing of a motion to dismiss in and of itself does not necessarily constitute a waiver of the defendant's right to proceed in the federal forum.") (internal quotation marks omitted). Critically, a defendant does not waive removal where the state acts *sua sponte*. *See Somoano v. Ryder Sys.*, Inc., 985 F. Supp. 1476, 1478 (S.D. Fla. 1998). Instead, waiver is found only in extraordinary circumstances where a defendant clearly manifests an intent to litigate on the merits in state court, such as years of active litigation or affirmatively setting dispositive motions for hearing. *See Calchas LLC v. Toucet*, No. 12-CV-81201, 2013 WL 12094327, at *3 (S.D. Fla. Apr. 29, 2013); *Grau v. Unum Life Ins. Co. of Am.*, No. 03-60258-CIV, 2003 WL 27165335, at *1 (S.D. Fla. Mar. 20, 2003).

## ARGUMENT

### I. Plaintiff's Fraudulent Joinder of Mr. Krenitsyn Prevents Remand

Plaintiff fails to rebut beehiiv's evidence or arguments that Mr. Krenitsyn's citizenship should not be considered for this Court's diversity analysis and instead relies on mischaracterizations of the record that do not meaningfully engage with—much less undermine—beehiiv's argument that Mr. Krenitsyn was fraudulently joined. The Motion for Remand should be denied.[1]

---

[1] beehiiv intends to move to dismiss both this matter and the related action by the Miami Legal and Rossdale Plaintiffs based on multiple, independent deficiencies, including lack of service, lack of personal jurisdiction, and failure to state a claim. On service, Plaintiff has still never served beehiiv or Mr. Krenitsyn, despite Plaintiff's assertions to the contrary. Mot. at 6. Plaintiff asserts that it "availed itself" of substituted process on beehiiv through the Florida Secretary of State pursuant to Florida Statute Section 48.161 in an effort to avoid its personal service obligations. *Id.* But Plaintiff never fulfilled the requirements of substituted service: Plaintiff never attempted personal service, and never filed an affidavit of compliance attesting that it did so before turning to service through the Secretary of State. Plaintiff has also failed to

6

### A. The FAC Is Devoid of Factual Allegations that State a Plausible Claim Against Mr. Krenitsyn

The only allegations in the FAC aimed specifically at Mr. Krenitsyn are conclusory assertions of wrongdoing levied on account of Mr. Krenitsyn's job title. Plaintiff's unsupported theory being that as beehiiv's chief of staff, Mr. Krenitsyn was responsible for beehiiv's compliance with laws. Mot. at 3. All other allegations are group pleadings about "Defendants" in general. Plaintiff contends these limited allegations against Mr. Krenitsyn paired with the grouped allegations against both Defendants satisfy Florida's pleading standard and overcome beehiiv's claim of fraudulent joinder. Not so.

In Florida state court, pleadings which set forth a claim for relief must state a cause of action and contain "a short and plain statement of the ultimate facts showing that the pleader is entitled to relief." Fla. R. Civ. P. 1.110(b)(2). This standard "forces counsel to recognize the elements of their cause of action and determine whether they have or can develop the facts necessary to support it, which avoids a great deal of wasted expense to the litigants and unnecessary judicial effort." *K.R. Exch. Servs., Inc. v. Fuerst, Humphrey, Ittleman, PL*, 48 So. 3d 889, 893 (Fla. Dist. Ct. App. 2010) (quoting *Horowitz v. Laske*, 855 So. 2d 169, 172 (Fla. Dist. Ct. App. 2003)). Florida courts have thus made clear that mere conclusions do not suffice. *See e.g., Beckler v. Hoffman*, 550 So. 2d 68, 70 (Fla. Dist. Ct. App. 1989).

As to claims brought against individual corporate defendants, moreover, well-settled Florida law demands that the plaintiff "allege and prove that the officer or agent owed a duty to the complaining party, and that the duty was breached through personal (as opposed to technical or vicarious) fault." *White v. Wal-Mart Stores, Inc.*, 918 So. 2d 357, 358 (Fla. Dist. Ct. App. 2005).[2] This requires the plaintiff to meet a four-part test:

> (1) the corporation owes a duty of care to the third party, the breach of which has caused the damage for which recovery is sought; (2) the duty is delegated by the principal or employer to the defendant officer; (3) the defendant officer has breached this duty through personal—as opposed to technical or vicarious—fault; and (4) with regard to the personal fault, personal liability cannot be imposed upon the officer simply because of his or her general administrative responsibility for

---

both provide *any* evidence of service of Mr. Krenitsyn or explain how a Florida resident would be subject to substituted service through the Florida Secretary of State. As a result, despite Plaintiff's assertions to the contrary, Mr. Krenitsyn has also not appeared in either matter.

[2] Florida courts consistently hold that FDUTPA claims sound in tort. *See You Fit, Inc. v. Core Indus., Inc.*, No. 8:12-cv-840-T-26TBM, 2012 WL 12952734, at *4 (M.D. Fla. June 22, 2012) (collecting cases).

> performance of some function of his or her employment. The officer must have a personal duty towards the injured third party, breach of which specifically has caused this party's damages.

*Watts v. Wal-Mart Stores E., LP*, 656 F. Supp. 3d 1363, 1368 (S.D. Fla. 2023) (citing *McElveen v. Peeler*, 544 So. 2d 270, 272 (Fla. Dist. Ct. App. 1989)).

When interpreting this pleading standard in the context of fraudulent joinder, courts undertake a summary-judgment-like assessment, requiring plaintiffs to rebut undisputed defense evidence with competent proof rather than relying on bare allegations from the complaint. *See supra* at 7.

Here, a review of Plaintiff's allegations concerning Mr. Krenitsyn establish that they are utterly conclusory and not supported by facts:

a. Paragraph 8: "Defendant Krenitsyn is the Chief of Staff for Defendant beehiiv, and in such position, is directly involved with and responsible for the (mis)conduct of Defendant beehiiv."

b. Paragraph 18: "Defendant Krenitsyn, as the Chief of Staff for Defendant beehiiv, is also responsible for the violations of FDUPTA [sic] documented here."

c. Paragraph 47: "Public policy mandates and requires that Defendant beehiiv provide Plaintiff with Plaintiff's unsubscribe data. As the Chief of Staff of Defendant beehiiv, Defendant Krenitsyn is responsible for ensuring that Defendant beehiiv acts in accordance with legal requirements."

d. Paragraph 64: "Defendant Krenitsyn is directly responsible for ensuring that Defendant beehiiv operates in a lawful manner."

These allegations come nowhere close to satisfying Florida's standard for imposing liability on a corporate officer. First, Plaintiff offers no facts to support the notion that beehiiv delegated the alleged duty to maintain a compliant email service to Mr. Krenitsyn as the defendant officer, or that such matters were otherwise under his control. Second, Plaintiff insists in the Motion that the FAC alleges personal—not technical or vicarious—faults by Mr. Krenitsyn. But the FAC includes no such allegations of personal fault. All allegations of wrongdoing aimed at Mr. Krenitsyn are framed as vicarious faults levied only on account of Mr. Krenitsyn's job title. *See e.g.*, FAC ¶ 8 ("Defendant Krenitsyn is the Chief of Staff for Defendant beehiiv, and in such position, is directly involved with and responsible for the (mis)conduct of Defendant beehiiv"); *id.* ¶ 18 ("Defendant Krenitsyn, as the Chief of Staff for Defendant beehiiv, is also responsible for the violations of FDUTPA documented here."); *id.* ¶

8

47 ("As the Chief of Staff of Defendant beehiiv, Defendant Krenitsyn is responsible for ensuring that Defendant beehiiv acts in accordance with legal requirements."); *supra* at 8.  This is not enough.

Third, courts caution that as to FDUTPA claims specifically, "[i]t has long been the law in Florida that in order to proceed against an individual using a FDUTPA violation theory an aggrieved party must allege that the individual was a direct participant in the improper dealings." *SIG, Inc. v. AT & T Digit. Life, Inc.*, 971 F. Supp. 2d 1178, 1195-96 (S.D. Fla. 2013) (quoting *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1074 (Fla. Dist. Ct. App. 2008)).  This is pervasive in case law for similar causes of action as alleged here.  *See Aboujaoude v. Poinciana Dev. Co. II*, 509 F. Supp. 2d 1266, 1277 (S.D. Fla. 2007) (dismissing FDUTPA claim against individual employee where plaintiff relied only on general allegations and "d[id] not specify his individual actions and how they constitute[d] a violation of FDUTPA"); *Beckler*, 550 So. 2d at 71 (affirming dismissal of gross negligence claim because it was "too general and vague and conclusory and therefore, insufficient," and did not allege particular facts establishing defendants' duty of care); *Warner v. Fla. Jai Alai, Inc.*, 221 So. 2d 777, 779 (Fla. Dist. Ct. App. 1969) (affirming dismissal of complaint because "more than a conclusory allegation is essential to the statement of a cause of action based on negligence").  The Court should deny the Motion for this reason alone.

### B. Plaintiff Fails to Rebut beehiiv's Evidence that Mr. Krenitsyn Is Not a Proper Defendant

Not only are the FAC's allegations against Mr. Krenitsyn insufficient on their own, but their deficiencies are even more egregious given that Plaintiff has not rebutted (and cannot rebut) the evidence submitted by beehiiv that Mr. Krenitsyn was not responsible for and had no involvement in legal compliance or Plaintiff's account.  Mr. Krenitsyn specifically attested under oath that his responsibilities "do not include and have not included ensuring that beehiiv acts in accordance with legal requirements, including those related to email marketing and unsubscribe tracking" and he "had no personal involvement in any services provided to Madison Row Marketing, Inc. or any communications with Madison Row Marketing, Inc. related thereto." Krenitsyn Decl. ¶¶ 8-9.

Courts in this District consistently deny motions for remand based on fraudulent joinder where plaintiffs fail to rebut the defendant's evidence showing there is no possibility of liability. In *Watts v. Wal-Mart Stores East*, a court in this District denied remand where the complaint

9

"fail[ed] to state personal actions or omissions *on [the store manager's] part* which gave rise to Plaintiff's injury" and the fraudulently joined defendant provided a declaration that showed no personal breach of a duty to the plaintiff beyond "general administrative responsibility." 656 F. Supp. 3d at 1368-69. Like here, the court found insufficient plaintiff's attempt to manufacture personal liability through conclusory, unsubstantiated (and later rebutted) allegations— like allegations that the store manager "was directly responsible for maintaining and operating the store"; the store manager "was directly responsible for executing [Walmart's] policies of store management and was personally involved in [its] tortious conduct"; and the store manager "knew, or in the exercise of reasonable care should have known, of such dangerous and defective condition and failed to take the appropriate steps to prevent Plaintiff's injuries." *Id*. at 1368 n.4. These are strikingly similar to the allegations against Mr. Krenitsyn in the FAC. *See supra* at 8. The court further emphasized that the plaintiff's contention that the store manager was liable based on the same allegations lodged against the company itself revealed that the claims were premised on vicarious liability, not any alleged personal wrongdoing by the manager. *Watts*, 656 F. Supp. 3d at 1368 (concluding that "allegations of negligence against Bartoli suggest a theory of vicarious liability akin to a claim brought against an employer" because the plaintiff "argue[d] Bartoli is liable for almost the exact same reasons that she argues Wal-Mart Stores East is liable"). Plaintiff does the same in the FAC and Motion: the vast majority of allegations in the FAC are directed at "Defendants" in general, not Mr. Krenitsyn, and fail to state a claim. *See, e.g.*, FAC ¶¶ 9, 20-21, 28, 30-37, 40-45, 50-54; Mot. at 2-6.

In *Herbst v. American Orthodontics Corporation.*, a court in this District denied remand where the plaintiff failed to rebut the defendant's evidence showing the fraudulently joined defendant had no role in the alleged conduct against the plaintiff (which included alleged FDUTPA violations) or any duties related to such conduct. No. 23-61262-CV, 2023 WL 7108825, at *3 (S.D. Fla. Oct. 10, 2023), *aff'd*, No. 23-13423, 2024 WL 3358520 (11th Cir. July 10, 2024). In doing so, the court reasoned that Plaintiff's "conclusory language [and] absence of factual allegations . . . show a deliberate tactic to hide the reality that there is no cause of action against [the individual]." *Id.* at *6. Moreover, the court denied remand despite the plaintiff's attempt to rebut the defendant's evidence through her own declaration because her declaration "offer[s] no meaningful response to Defendant's characterization of the business structure," and

10

"does not contradict the affidavit's description of [the individual's] authority." *Id.* at *3. The same is true here.

Likewise, the court in *De Varona v. Discount Auto Parts, LLC* denied the plaintiff's motion to remand after the defendant submitted testimony that he was not in the area when the incident occurred, he could not see the area from his workplace, and he had "no knowledge of the hazardous condition." 860 F. Supp. 2d at 1347. Even though the plaintiff offered photographic evidence to suggest the defendant knew or should have known of the condition, the court held that these photographs "[did] not controvert [defendant's] disavowal of having any responsibility over the [incident area]." *Id*. The court likewise found insufficient the plaintiff's attempt to rely on unsubstantiated allegations from her complaint, "that 'Grant, as Manager' was obliged to 'use reasonable care to protect De Varona . . . .' and 'to take affirmative steps to warn customers and/or supervise his employees.'" *Id*. Finding "no reasonable basis" for the plaintiff to rely on "unsupported allegations," the court denied the motion to remand. *Id*. at 1346-47.

Here, Plaintiff has not even attempted to offer rebuttal evidence and rests its claim on purely conclusory allegations in the FAC. As such, the facts of this case must be resolved in beehiiv's favor. This falls squarely within the prevailing rule applied by courts in this District that a defendant is fraudulently joined if the plaintiff fails to rebut the defendant's evidence of his non-involvement. *See, e.g.*, *Coney v. Cheddar's Casual Cafe, Inc.*, No. 17-80670-CIV, 2018 WL 11457715, at *3 (S.D. Fla. Sept. 7, 2018) ("Since Plaintiff has provided no evidence whatsoever to rebut [defendant's] denial of personal involvement in the alleged incident, the Court finds that there is no reasonable possibility that Plaintiff can establish a cause of action against [defendant]."); *Ramos v. Costco Wholesale Corp.*, No. 22-81330-CIV, 2022 WL 22996881, at *6 (S.D. Fla. Oct. 20, 2022) (denying the plaintiff's motion to remand and disregarding individuals' citizenship for diversity analysis where plaintiff "offer[ed] no evidence" to dispute defendants' affidavits); *Siciliano v. Target Corp.*, No. 14-80459-CIV, 2014 WL 12461368, at *2 (S.D. Fla. Aug. 4, 2014) (finding the defendant was fraudulently joined where it "submitted evidence that [defendant] was not personally involved in the incident and [plaintiff] has not pointed to any evidence" to support her claims).

In an attempt to bypass pleading obligations, Plaintiff cites solely to slip-and-fall cases that named the retail location manager as a defendant. Mot. at 14-16. Plaintiff alleges these

11

claims against the store manager present "almost identical fact patterns to the instant matter" filed against an administrative employee. *Id*. That is wrong as a matter of logic and law.

  First, Florida law carves out a special rule directed at slip-and-fall cases. The Legislature enacted the Premises Liability for Transitory Foreign Substances in a Business Establishment law to permit slip-and-fall victims to bring claims against the brick-and-mortar business based on "actual or constructive knowledge of the dangerous condition." *Angel v. Target Corp.*, No. 20-62701-CIV, 2021 WL 1380161, at *5 (S.D. Fla. Apr. 13, 2021) (citing Fla. Stat. § 768.0755, which is expressly limited to "slips and falls on a transitory foreign substance in a business establishment"). By the plain words of the statute, this exception is cabined to physical stores containing dangerous conditions. This is clear from the cases Plaintiff cites, which also expressly tie their holdings to slip-and-fall claims. *See Krobatsch v. Target Corp.*, No. 20-81552-CIV, 2020 WL 6375175, at *4 (S.D. Fla. Oct. 30, 2020) (finding no fraudulent joinder based on the observation that "[u]nder Florida law . . . the manager of a store can be liable if he has either actual *or constructive notice*."); *Angel*, 2021 WL 1380161, at *5 (same); *Smothers v. Wal-Mart Stores E., LP*, No. 2:24-CV-1067-JES-KCD, 2025 WL 858258, at *2 (M.D. Fla. Mar. 19, 2025) (same). Here, Plaintiff is not slip-and-fall victim, and Mr. Krenitsyn is not a store manager. This Court should not accept Plaintiff's invitation to extend jurisprudence governing the liability of retail stores for accidents to corporate acts in an email marketing case. Rather, to hold Mr. Krenitsyn personally liable, Plaintiff must establish that he "owed a duty to the complaining party, and that the duty was breached through personal (as opposed to technical or vicarious) fault." *White,* 918 So. 2d at 358. Absent allegations that Mr. Krenitsyn owed a personal duty to Plaintiff, or that he breached such duties, Plaintiff's claim cannot stand.

  Second, Plaintiff's cases involve physical stores where the individual named as a defendant was the manager on the day of the incident. *Krobatsch*, 2020 WL 6375175 at *1 ("Leader on Duty"); *Angel*, 2021 WL 1380161, at *1 ("store manager"); *Smothers*, 2025 WL 858258, at *1 ("employee in charge of daily operations"). In all those matters, the manager defendant was directly responsible for maintaining store safety or implementing protocols ensuring store safety. These facts clearly differ from the present case, where Plaintiff arbitrarily named an administrative employee who Plaintiff admits at all relevant times was merely a chief of staff (and who further attested he had no control or personal involvement in beehiiv's alleged actions in this matter). Krenitsyn Decl. ¶ 9. Acting as a chief of staff in an administrative

12

function is not comparable to serving as manager of an entire store. This disconnect is fatal to Plaintiff's theory. While it is plausible in some circumstances that a store manager's on-site role involves maintaining on-premise safety, Plaintiff offers no factual or legal basis for extending similar obligations to a corporate chief of staff. The FAC relies instead on conclusory assertions—untethered to the actual responsibilities of Mr. Krenitsyn's role—that he bore legal compliance duties.[3] Plaintiff alleges no facts suggesting that the chief of staff exercised control over any email marketing, legal, or compliance functions.

Third, Plaintiff's cases do not involve unrebutted evidence like that at issue here. In *Krobatsch*, the defendant store manager never challenged the plaintiff's allegation that he was responsible for monitoring the cleanliness of the floors. 2020 WL 6375175, at *4. Rather, the store manager only attested that he "didn't see the spill, he wasn't told about the spill, he didn't overhear anyone mention a spill, and he was totally unaware of the spill." *Id*. This statement only suggested that the manager lacked actual notice, not constructive notice. *Id*. In *Angel*, the store manager "ha[d] submitted no such affidavit, thus leaving open the possibility that he had both actual *and* constructive notice." 2021 WL 1380161, at *6. And the *Smothers* court in the Middle District of Florida based its decision on "manager" liability in the retail context. *See Smothers*, 2025 WL 858258, at *2 (relying on *Valencia v. Wal-Mart Stores, Inc.*, No. 23-CV-20862, 2023 WL 3172532, at *2 (S.D. Fla. May 1, 2023), which was specific to "store manager[s] in possession and control of the premises"). Accordingly, these decisions have no bearing on the present case.

Plaintiff's only remaining argument against fraudulent joinder rests on grossly inaccurate characterizations of Mr. Krenitsyn's declaration. Plaintiff repeatedly claims that Mr. Krenitsyn "swor[e] in his affidavit . . . that [he] has **no** regard for 'ensuring that beehiiv acts in accordance with legal requirements'" and goes on to assert that this supposed "admission of not adhering to FDUPTA [sic] would almost certainly compel the state court to enter summary judgment against Defendant Krenitsyn." Mot. at 3-4; *see also id.* at 3 (asserting "Defendant Krenitsyn's own

---

[3] Plaintiff's Motion to Remand asserts for the first time that Mr. Krenitsyn's title in 2026 changed to chief operating officer, but Plaintiff does not explain how this is at all relevant, given it falls entirely outside the relevant time period, October 21 to October 23, 2025. *See* FAC ¶¶ 19-23.

13

affidavit to this Court admits under oath that he has failed to adhere to Florida law."). This reading is not merely strained; it is wrong.

Mr. Krenitsyn's declaration clearly stated that his "responsibilities do not include and have not included ensuring that beehiiv acts in accordance with legal requirements, including those related to email marketing and unsubscribe tracking." Krenitsyn Decl. ¶ 8. That statement says nothing about having "no regard for," "not adhering to," or "fail[ing] to adhere" to applicable law, let alone admitting FDUTPA violations. Plaintiff's attempts to recast this straightforward declaration are serious mischaracterizations of the record and demonstrate a "deliberate indifference to obvious facts." *Gulisano v. Burlington, Inc.*, 34 F.4th 935, 942 (11th Cir. 2022). Accordingly, Plaintiff's mischaracterizations should be given no weight by this Court and cannot support Plaintiff's burden of showing a viable claim against Mr. Krenitsyn for purposes of avoiding a finding of fraudulent joinder.

## II. beehiiv Did Not Waive Its Right to Remove the Case by Calling the Clerk About Status of Pretrial Conference and Filing a Three-Page Response Ordered by the State Court

Plaintiff's argument that Defendants waived removal falls far short of the high threshold for finding waiver. For waiver to occur, a defendant must take "substantial offensive or defensive action . . . indicating a willingness to litigate in that tribunal before filing a notice of removal to federal court." *Yusefzadeh*, 365 F.3d at 1246. Here, Plaintiff argues that Defendants waived removal by contacting the Miami-Dade County Court clerk regarding the status of a pretrial conference and filing a required response to an order to show cause. This is nonsensical.

The standard for waiving removal is incredibly high. Courts refuse to find a waiver, even where defendants filed motions to dismiss or took other actions that were procedurally required or otherwise maintained the status quo pending removal. *See supra* at 5-6. Instead, courts in this District will find waiver only in extraordinary cases where defendants make clear their intent to litigate in state court. *See Calchas LLC*, 2013 WL 12094327, at *3 (observing defendant litigated for over eight years in state court and took substantial action on the merits in state court); *Grau*, 2003 WL 27165335, at *1 (observing defendants themselves set their motion to dismiss for hearing). Importantly, a defendant does not waive the right to remove where the court schedules a hearing or otherwise acts on its own. *See Somoano*, 985 F. Supp. at 1478 ("[A] defendant does not waive its right to proceed in federal court if the Plaintiff requests a state court hearing or the state court judge sets a hearing *sua sponte* . . . .").

14

Here, neither contacting the Miami-Dade County Court clerk to inquire about the status of a pretrial conference nor filing a required response to an order to show cause come close to satisfying the high standard for waiver. As an initial matter, Plaintiff's assertion that beehiiv somehow "caused" the Miami-Dade County Court to issue the show cause order "by [its] self-initiated, *ex parte* communications" is improper and incorrect. *See* Mot. at 18. Plaintiff's assertion that the state court improperly took judicial action based on *ex parte* communications is a serious accusation. It is also wrong: the show cause order clearly states that it was issued "[b]ased on the Court's sua sponte review of the docket." Notice of Removal Ex. E at 1, ECF 1-5 ("Show Cause Order"). In reality, beehiiv contacted the court clerk to ask about the status of the pretrial conference after Plaintiff filed the FAC, because beehiiv intended to file a motion to continue the conference after Plaintiff's counsel declined to consent. Decl. of Kelsey Harclerode ¶¶ 2-4, Ex. A. Plaintiff does not cite any authority suggesting that such routine administrative communications constitute waiver.

beehiiv's response to the Show Cause Order likewise does not constitute waiver because it was procedurally required. Show Cause Order ("Accordingly, the parties have seven days from the date of this order to show cause why this case should not be transferred to the circuit court upon Plaintiff's payment of the appropriate filing fees."). Courts consistently hold that defendants complying with such mandatory procedural directives to preserve the status quo pending removal does not evidence an intent to litigate on the merits or waive the right to remove. *See Yusefzadeh*, 365 F.3d at 1246 (holding no waiver of the right to remove from filing materials in "compliance with Florida law"); *Miami Herald Pub. Co., Div. of Knight-Ridder Newspapers, Inc. v. Ferre*, 606 F. Supp. 122, 124 (S.D. Fla. 1984) (holding no waiver of the right to remove from "either defending at the preliminary injunction hearing or by filing an answer and affirmative defenses in state court prior to filing a timely petition for removal"). This is true even where the defendant filed a motion to dismiss in state court before removing the matter. *See e.g., Yusefzadeh,* 365 F.3d at 1246; *Frey v. Minter*, 829 F. App'x 432, 437 (11th Cir. 2020); *Rosenberg v. Reliance Standard Ins. Co.*, No. 22-81495-CV, 2023 WL 5627056, at *1 (S.D. Fla. Apr. 4, 2023) ("[W]hen a defendant files a motion to dismiss to comply with (Florida) state court rules and then promptly removes before the state court can rule on the motion, it has not waived removal."). For the same reasons, Plaintiff's assertion that beehiiv waived removal by filing a response to the Show Cause Order is meritless. The response was ordered by the

court, less than three pages, and stated that the small claims court "dismiss this case and allow Plaintiff to re-file the case in the circuit court" given Plaintiff's failure to serve beehiiv. Notice of Removal Ex. G at 2, ECF 1-7. This limited and required response falls well short of conduct reflecting willingness to litigate in state court.

Moreover, the cases Plaintiff cites in its Motion underscore that no waiver occurred, as they illustrate the exceptionally high bar required to find waiver of the right of removal. *See e.g., Aqualon Co. v. Mac Equip., Inc.*, 149 F.3d 262, 264 (4th Cir. 1998) (cautioning waiver "should only be found in 'extreme situations'" where a party has demonstrated "a 'clear and unequivocal' intent to remain in state court"); *Heafitz v. Interfirst Bank of Dallas*, 711 F. Supp. 92, 96 (S.D.N.Y. 1989) (finding waiver where, prior to removal, defendant "actively [sought] a decision on the merits" by filing—and receiving a response to—a supplemental motion); *Jacko v. Thorn Americas, Inc.*, 121 F. Supp. 2d 574 (E.D. Tex. 2000) (finding waiver where a defendant filed, argued, and won a motion for summary judgement in state court); *Scholz v. RDV Sports, Inc.*, 821 F. Supp. 1469, 1470 (M.D. Fla. 1993) (finding waiver where defendant filed multiple motions and, itself, scheduled multiple hearings). Plaintiff's argument for waiver fails.

### III. Plaintiff's Claims Arise Under Federal Law

Plaintiff's Motion argues that the FAC does not raise a federal question because it only brings state causes of action. It is well-settled, however, that even where "state law creates [the plaintiff's] causes of action," federal question jurisdiction exists so long as "its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 13 (1983). The Supreme Court is clear that where "a state-law cause of action is 'brought to enforce' a duty created by the [federal statute]," the claim arises under federal law "because the claim's very success depends on giving effect to a federal requirement." *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374, 384 (2016).

Although the FAC conveniently avoids mentioning the CAN-SPAM Act by name, it is clear from the face of the pleadings that Plaintiff's claims turn on the federal statute. The FAC alleges beehiiv violated email marketing laws and that FDUTPA "incorporates and makes part of Florida Law the regulations governing email marketing law." FAC ¶ 30. In explaining "[t]hose laws," the FAC directly quotes from large sections of the CAN-SPAM Act. *Id.* (citing multiple provisions in 15 U.S. Code § 7701 for almost a page). Plaintiff's FDUTPA claim thus expressly

16

"incorporates" CAN-SPAM Act, *id.*, and the FAC presents a federal question "on its face," *Schleider v. GVDB Operations, LLC*, 121 F.4th 149, 156 (11th Cir. 2024). It is of course correct that Plaintiff's FDUTPA claim "will be supported if the federal law is given one construction or effect and defeated if it is given another." *See Mobil Oil Corp. v. Coastal Petroleum Co.*, 671 F.2d 419, 422 (11th Cir. 1982). The only marketing law alleged in the FAC to regulate unsubscribe links is the CAN-SPAM Act; FDUTPA says nothing about the matter. Thus, the federal statute's construction and effect are "essential element[s]" of Plaintiff's claims. *Id.* This is true of each of Plaintiff's claims, which all turn on beehiiv's alleged CAN-SPAM Act violations.

### IV. Plaintiff's Request for Leave to Amend Should Be Denied

Plaintiff alternatively seeks leave to amend the complaint. Mot. at 19. Plaintiff, however, neither submits a proposed amended complaint nor explains how the complaint could be amended in good faith to avoid a finding of fraudulent joinder. Without any proposed amendment, this Court cannot fulfill its obligation to "scrutinize th[e] amendment." *Access Pictures, LLC v. Sony Pictures Home Ent., Inc*., No. 16-20529-CIV, 2017 WL 3107202, at *2 (S.D. Fla. Feb. 21, 2017), *report and recommendation adopted*, No. 16-20529-CIV, 2017 WL 7735188 (S.D. Fla. Dec. 29, 2017). This failure alone warrants denial of Plaintiff's request. *See e.g. VY Marina Mile LLC v. Boscaino*, No. 24-CV-60335, 2025 WL 1279367, at *2,4 (S.D. Fla. May 2, 2025) (denying leave to amend where the plaintiff failed to provide "substantive argument . . . regarding good cause" and did not include any "new facts" in his motion).

Moreover, to the extent Plaintiff seeks leave to amend the complaint to add or expand allegations against Mr. Krenitsyn, any such amendment would be futile. *See, e.g.*, *Passage Health Int'l, LLC v. USAble HMO, Inc.*, No. 0:23-CV-62302, 2024 WL 3617472, at *1 (S.D. Fla. Aug. 1, 2024) (citing *Patel v. Ga. Dep't BHDD*, 485 F. App'x 982, 982 (11th Cir. 2012)) ("Futility justifies the denial of leave to amend where the complaint, as amended, would still be subject to dismissal."). As explained above, Plaintiff's claims against Mr. Krenitsyn fail both because they lack all detail, and because Mr. Krenitsyn had no involvement as a chief of staff in the allegations of legal misconduct against beehiiv. Plaintiff does not (and cannot) explain how amendment could cure these fundamental defects. Because amendment cannot supply facts that do not exist, Plaintiff is not entitled to a second bite at the apple.

## **CONCLUSION**

For the above reasons, this Court should deny Plaintiff's Motion to Remand.

Date: February 11, 2026

*/s/ Kelsey Harclerode*
Kelsey Harclerode (Florida Bar No. 1048280)
Email: kelsey@zwillgen.com
Nury Siekkinen (Florida Bar No. 1015937)
Email: nury@zwillgen.com

**ZWILLGEN PLLC**
1900 M Street NW, Suite 250
Washington, DC 20036
Telephone: (202) 296-3585
Facsimile: (202) 706-5298

*Attorneys for Defendant
beehiiv Inc.*

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system on February 11, 2026, and the foregoing document is being served this day on all counsel or parties of record on the Service List below, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

*/s/ Kelsey Harclerode*
Kelsey Harclerode

Jordan A. Dresnick (SBN 058529)
Law Offices of Jordan A. Dresnick
901 Brickell Key Blvd.
Miami, FL 33131
Tel: 786-220-8785
Email: JordanDresnick@gmail.com

Amado Alan Alvarez (SBN 746398)
THE ALVAREZ & FRIGER TRIAL LAW FIRM
66 West Flagler Street, 12th Floor
Miami, Florida 33130
Tel. 305-258-2739
Fax: 1-844-252-6329
Email: Alan@AlvarezFrigerTLF.com

Kenneth B. Schurr (SBN 876100)
Manno & Schurr PA
2030 S Douglas Road
Suite 105
Coral Gables, FL 33134
Tel: 305-441-9031
Fax: 786-221-2720
Email: kbsservice@schurrlaw.com, counselken@schurrlaw.

*Attorneys for Plaintiff*
*Madison Row Marketing, Inc.*